LOUISE P. STEVENS AND ANOTHER *vs.* ROBBINS BATTELL AND OTHERS.

SAME *vs.* ABEL CAMP AND OTHERS.

While it is a settled principle that one of several tenants in common can not convey ,his interest in a portion of the land by metes and bounds without the consent of the others, yet this principle does not apply where a proceeding *in rem* is instituted to condemn land for a public use. Here the object is not to acquire a tenancy in common but the land itself, and if some tenant in common is not made a party to the proceeding, so that his interest is not taken, it does not prevent the acquisition of the interests of the others.

Where land was thus taken by a town for a burying ground, and the agents of the town, supposing a full title had been acquired, entered upon the premises for the purpose of preparing it for use as a burying ground, but where nothing had actually been done that might not lawfully have been done by a tenant in common, it was held that the remaining tenant in common could not maintain trespass upon the ground of an ouster, nor case upon the ground of a misuse of the premises.

TWO ACTIONS OF TRESPASS, with a count in case in one of them; brought to the District Court of the county of Litchfield, and tried to the court before *Stoddard, J.* The following facts were found by the court:—

On the 21st day of August, 1872, one of the plaintiffs, Louise P. Stevens, was, and for some time had been, the owner of one undivided third part of the premises described in the declaration, (which were a part of a farm of land, owned and occupied by the said Louise but separated therefrom by a highway,) as heir of Halsey Stevens and as tenant in common with Jonathan H. Stevens her brother, two thirds being owned by the latter; the other plaintiff, Deziah H. P. Stevens, had a right of dower in the land.

On the 21st day of August, 1872, the town of Norfolk by its selectmen brought their petition against Jonathan H.

Stevens to the Superior Court in Litchfield County, praying that the town might be allowed to take the land to enlarge the limits of a burying ground, and such proceedings were had that the court, on the 19th day of December, 1873, decreed that the burying ground be enlarged by adding thereto the tract of land described in the declaration.

During all the time this question was pending in the Superior Court, the town of Norfolk and its selectmen supposed that Jonathan H. Stevens was the sole owner of the land, and supposed that they had obtained an absolute title to the entire tract.

On the 21st day of May, 1874, at a legal meeting of the voters of the town the defendants were appointed a committee in behalf of the town to enter upon the tract and prepare it for a burying ground. On the 23d and 26th days of May, 1874, the defendants, acting in behalf of the town, and for the purpose stated, entered upon the land and removed the division fence between it and the old burying ground, which fence was owned by the town and the plaintiff had no title to any part of it. They also dug up a large number of stones and rocks, removing some before the injunction hereinafter mentioned was served upon them, and leaving some upon the ground.

The ground at this time was grass land, and the injury to the grass by the acts of the defendants for the years 1874 and 1875 amounted to the sum of $75, including the extra expense the plaintiff was put to by reason of these acts in cutting and removing the hay.

On the 9th day of June, 1874, Jonathan H. Stevens obtained a temporary injunction against the town's taking possession of the premises, but on the 10th day of December, 1874, after a hearing the injunction was dissolved.

After the town found that by their proceedings against Jonathan H. Stevens they had not obtained a full title to the land, it brought a petition to the April term, 1876, of the Superior Court at Litchfield, against the plaintiffs, praying for liberty to take so much of the title to the land as was vested in the plaintiffs. The petition was returned to

court and such proceedings had thereon that on the 4th day of May, 1877, the court decreed that the burying ground be enlarged by adding thereto the land described in the declaration.

There were assessed and allowed to Jonathan H. Stevens for damages the sum of $950, to Louise P. Stevens the sum of $200, and to Deziah H. P. Stevens the sum of $75; all of which the town has paid.

The defendants entered upon the land honestly and in good faith, acting for the town, and all their acts were done in a proper manner, and were necessary for the purpose of preparing the ground for the uses for which it had been condemned.

The town and defendants did not know until the 26th of May, 1874, or shortly after, that the plaintiffs had or claimed any right or title in the premises.

Upon the trial the plaintiffs claimed that upon the facts proved they could maintain trespass against the defendants; that all the proceedings against Jonathan H. Stevens were inoperative against his co-tenants and gave the town no right to enter upon the land; and that if the town of Norfolk was tenant in common with the plaintiffs on the 23d and 26th days of May, 1874, the acts done were such that the plaintiffs as tenants in common with the town could maintain trespass against them. The court overruled all these claims of the plaintiffs, and rendered judgment for the defendants.

The plaintiffs brought the case before this court by a motion in error.

*H. P. Lawrence*, for the plaintiffs.

1. The town of Norfolk was not, by decree of the court against J. H. Stevens, made tenant in common with the plaintiffs. The town had title, if any at all, *only for the purpose of a burying ground*. The plaintiffs had no use for the land for sepulture, and the town had no use for it for purposes of agriculture. If the town appropriated the land to its purposes, such use was inconsistent with the rights

of the plaintiffs, and there was no method of accounting whereby the plaintiffs could be indemnified.    There was no community of interest possible.

2.   The proceedings against J. H. Stevens were inoperative against his co-tenants.    *Hartford & Salisbury Ore Co.* v. *Miller*, 41 Conn., 112; *Stevens* v. *Town of Norfolk*, 46 id., 227.

3.   The decree being inoperative against the plaintiffs as co-tenants, the defendants as agents of the town could have no right to enter upon the premises in the name of the town, and are liable as trespassers.    They claim no right to enter but in behalf of the town.    The plaintiffs were in possession of the premises as co-tenants, and are entitled to recover.    *Brown* v. *Wheeler*, 17 Conn., 350; *Church* v. *Meeker*, 34 id., 422.   It is found that damage to the amount of $75 was done, but no one is liable for it; the owners are injured, but denied a remedy.

4.   If the town of Norfolk was tenant in common with the plaintiffs on the 23d and 26th of May, 1874, the acts done, (the attempt to take exclusive possession of the premises, and the appropriation of the land for a public burying ground, the removal of the fence and tearing up the ground in process of grading it,) were such acts that the plaintiffs have a remedy against the defendants therefor by action of trespass.    The appropriation of the land for a public burying ground was an appropriation to the exclusive use of the one tenant, the others having no right or use remaining, and so, *quoad* the other tenants, a destruction of the common estate.   1 Washb. R. Prop., 418; *Reading's case*, 1 Salk., 392; *Steadman* v. *Smith*, 8 Ell. & Bl., 1; *Murray* v. *Hall*, 7 Com. Bench, 441; *Bennett* v. *Clemence*, 6 Allen, 18; *Silloway* v. *Brown*, 12 id., 30; *Thomas* v. *Pickering*, 13 Maine, 353; *Maddox* v. *Goddard*, 15 id., 218; *Great Falls Co.* v. *Worster*, 15 N. Hamp., 412; *Erwin* v. *Olmsted*, 7 Cow., 229; *Dubois* v. *Beaver*, 25 N. York, 123; *McGill* v. *Ash*, 7 Penn. St., 397.

5.   A tenant in common may maintain trespass against a co-tenant when his co-tenant expels him from the premises

or prevents his entry. Cases cited above; also *Thompson* v. *Gerrish*, 57 N. Hamp., 85; *Filbert* v. *Hoff*, 42 Penn. St., 97; 1 Washb. R. Prop., 418. And this, although there be no exhibition of force, but merely a denial of right. *Jefcoat* v. *Knotts*, 13 Rich. (S. C.) 50. Trespass or ejectment, at his election, lies in favor of one co-tenant against another who has actually ousted him from the premises. *Murray* v. *Hall*, 7 Com. Bench, 441; *Silloway* v. *Brown*, 12 Allen, 37.

6. The particular destruction of the subject of the tenancy by a co-tenant, is a ground for an action of trespass by his co-tenant. *Cubitt* v. *Porter*, 8 Barn. & Cress., 257; *Voyce* v. *Voyce*, Gow, 201; *Maddox* v. *Goddard*, 15 Maine, 218; *Symonds* v. *Harris*, 51 id., 14; *Benedict* v. *Howard*, 31 Barb., 569; *Bennet* v. *Bullock*, 35 Penn. St., 364; *Critchfield* v. *Humbert*, 39 id., 427.

7. An action on the case, sounding in tort, may be maintained by one tenant in common against his co-tenant, for misuse of the common property, though not amounting to a total destruction of it. *McLellan* v. *Jenness*, 43 Verm., 183. Ejectment will lie by one tenant in common of realty, against another, in the case of an actual ouster. *Peaceable ex dem. Hornblower* v. *Read*, 1 East, 568; *Bethell* v. *McCool*, 46 Ind., 303; *Noble* v. *McFarland*, 51 Ill., 226. And after recovery in such action, trespass for mesne profits may be brought. *Goodtitle* v. *Tombs*, 3 Wils., 118. Why may not trespass lie? Ejectment furnishes no remedy for the damages.

*C. B. Andrews*, for the defendants.

CARPENTER, J. Here are two actions. The declaration in the suit against Battell and others contains three counts. The first is an action of trespass in common form; the second is founded on the statute for unlawfully throwing down and leaving open a certain fence; and the third is a count in case. The second is not insisted on. In the suit against Camp and others there is a single count in trespass. Both suits relate to the same subject matter, and both must stand or fall together.

Stevens *v.* Battell.

The acts of the defendants which are complained of as trespasses were done by direction of the town of Norfolk and the town is the real party in interest.

The facts briefly stated are these:—In 1872 the town desired to enlarge their burying ground, and for that purpose instituted proceedings *in invitum* to take the *locus in quo*, making J. H. Stevens alone the party respondent, supposing him to be the sole owner. A decree was passed in favor of the town in December, 1873, whereby the town supposed it had acquired a perfect title to the land. The acts complained of were committed on the 23d and 24th of May, 1874.

In 1876 the town, learning that the plaintiffs had an interest in the premises, instituted a second proceeding for the purpose of acquiring their title. In May, 1877, the town had a decree in its favor and the damages assessed were paid to the plaintiffs.

The court below rendered judgment for the defendants, and the plaintiffs filed a motion in error. The record raises two questions:

1. Did the town acquire any title to or right in the premises by the decree passed in December, 1873? If it did not the defendants were clearly trespassers and judgment should have been rendered against them for some damages.

The plaintiffs claim that those proceedings were inoperative; that the town could not take the interest of one tenant in common in a part only of the common property. It is true the law will not allow one of two or more co-tenants, without the consent of the others, to sever the estate and sell his interest in a portion of it by metes and bounds. So too a creditor may not levy his execution in that manner, but must take a fractional part of the debtor's interest in the whole common estate. If the object and purpose of these proceedings were simply to acquire the interest of J. H. Stevens in the premises, thereby making the town owners as tenants in common with the plaintiffs, leaving J. H. Stevens and the plaintiffs tenants in common in respect to the rest of the undivided property, it would be

difficult consistently with the decisions on that subject to give effect to that decree. But the intention was quite different from that. The town did not desire or expect a joint interest with others, but the whole title, and it was by an accident or oversight that it found itself a partial owner only. But what is of still more importance, the proceeding does not have reference to the interest of a tenant in common, but the land itself is condemned for a public use, and the object is to make compensation to the owner and extinguish his title.

In *Stevens* v. *Town of Norfolk*, 46 Conn., 227, the question was whether by the two proceedings the town had accomplished that object. This court held that it had. Conceding the petitioner's claim, that the principle governing voluntary deeds by tenants in common applied to the case, the court came logically to the conclusion that the result was a complete title in the town. The question now arises whether that principle applies, and whether the town by the proceedings against J. H. Stevens, and before the proceedings against the plaintiffs, acquired any interest in the land for any purpose. With some hesitation we have come to the conclusion that, inasmuch as it was a proceeding *in rem*, the land itself being condemned and taken for a public use, the town thereby acquired all the rights of J. H. Stevens and became practically a tenant in common with the plaintiffs. The reasons underlying the principle, as given by LOOMIS, J., in *Stevens* v. *Town of Norfolk*, make it evident that the principle does not properly apply to a proceeding *in rem* to condemn land for a public use.

2. That brings us to the second question, which is, whether the plaintiffs, under the circumstances, can maintain trespass. The claim that they can rests upon the assumption that they were ousted by their co-tenants. That assumption however is not justified by the finding. After entering upon the land and digging some stone, and removing a portion of the fence between it and the old burying ground, preparatory to using the land for burial purposes, and intending so to use it, they evidently desisted for more

than two years; for it is found that the plaintiffs were damaged in the years 1874 and 1875 the sum of $75, "in cutting and removing the hay." There is no finding that the plaintiffs were otherwise disturbed in their possession of the land and there is nothing to indicate that there was an actual ouster. Manifestly therefore the plaintiffs remained in the possession after the alleged trespasses, and probably in the exclusive possession.

The entry upon the land by the defendants with the intention to use it for a purpose wholly inconsistent with any use by the plaintiffs, so long as that intention was not carried into effect, did not of itself amount to an ouster; as the plaintiffs did not abandon it and elect to consider themselves ousted, but remained in possession.

It is claimed that there was a misuse of the property not amounting to a destruction of the common estate, for which case will lie. If in any case such an action may be maintained we do not think the facts now before us will justify it. Nothing was done by the defendants which might not have been done by any tenant in common on the common land, and that might not have been done purely for agricultural purposes. The fact that it was done for a different purpose, so long as it was not accomplished, and the plaintiffs did not elect to treat it as accomplished, will not subject the defendants to an action.

Our conclusion therefore is that there is no error.

In this opinion the other judges concurred.